**FILED - KZ**
December 17. 2025 10:31 AM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
_ems_   Scanned by ES / 12 / 17

# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF MICHIGAN

# SOUTHERN DIVISION

Plaintiff,

**Ronald Warren Saunders III,**

*on behalf of*

*C.J.W. (Saunders)*

represented by **Ronald Warren Saunders, III**

10442 Tomkinson Dr.

Scotts, MI 49088

PRO SE

*v.*

Civil Action No. 1:25-cv-00544-HYJ-PJG

Chief U.S. District Judge Honorable Hala Y. Jarbou

U.S. Magistrate Judge Hon. Phillip J. Green

COUNTY OF ALLEGAN, et al.,

Defendants.

## MOTION TO ALTER OR AMEND JUDGMENT

## AND FOR RELIEF FROM JUDGMENT

(Fed. R. Civ. P. 59(e) and 60(b)(1)-(6))

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Plaintiff,
**Ronald Warren Saunders III,**
*on behalf of*
*C.J.W. (Saunders)*

represented by **Ronald Warren Saunders, III**

10442 Tomkinson Dr.

Scotts, MI 49088

PRO SE

*v.*

Civil Action No. 1:25-cv-00544-HYJ-PJG

Chief U.S. District Judge Honorable Hala Y. Jarbou
U.S. Magistrate Judge Hon. Phillip J. Green

COUNTY OF ALLEGAN, et al.,
Defendants.

## COVER PAGE

Title/Table of Contents/Table of Authorities ............................................................. ii

Motion to Alter or Amend Judgement and Relief for Judgement ................................... 1-21

Public Corroboration of Systemic Concerns (Contextual Support) ................................ 1-5

Affidavit **of** Procedural Purpose And Exhibit Preservation ......................................... 1-3

Exhibit Index ..................................................................................................... 1-2

Exhibit AO096 (Elizabeth Hertel Article) ............................................................... 1

Exhibit AO97 (Judge Baillargeon Resignation) ....................................................... 1

Exhibit AO098 (Rosati, Schultz, Joppich & Amtsbuechler P.C. Invoice Slip) ................. 1-22

Exhibit AO099 (Constitutional Challenge) .............................................................. 1-18

Table of Contents

TABLE OF AUTHORITIES ........................................................................................iii

**INTRODUCTION AND RELIEF REQUESTED** ................................................... 1

**GOVERNING STANDARDS** ............................................................................... 3

    **Rule 59(e) and Fed. R. Civ. P. 60(b)(1)-(6)** ............................................... 3

**PROCEDURAL BACKGROUND** ........................................................................ 4

    **Escalating Violations, Leave-to-Amend History, and Resulting Procedural Error** ...... 4

    **Procedural History Through July 10, 2025** ............................................... 4

    **October 2025 Leave-To-Amend Sequence** ................................................ 5

    **Plaintiff's Ongoing Efforts to Cure Deficiencies** ...................................... 6

    **Procedural Impossibility and Manifest Injustice** ...................................... 7

**ARGUMENT** ....................................................................................................... 8

    **Rule 59(e): Clear Procedural Error and Manifest Injustice** ......................... 8

    **After Granting Leave, the Court Converted a Motion Attachment Into the Operative Pleading Without Permitting Plaintiff to File** ............................................... 9

    **The November 19, 2025, Order Misapprehends the Procedural Record** .............. 9

    **The "Volume of Motions" Resulted from Plaintiff's Attempts to Comply With the Leave Order** ............................................................................................10

    **Judgment Was Entered Without Adjudicating the Pending Constitutional Challenge**11

**Fed. R. Civ. P. 60(b)(2) AND (6): NEWLY DISCOVERED EVIDENCE AND EXTRAORDINARY CIRCUMSTANCES** .................................................................12

    **Constitutional Standard: Structural Due Process** ....................................12

    **Billing Records Reflecting Pre-Litigation Monitoring and Coordination** .............14

    **Risk Management Authority (MMRMA) Risk Pooling** ...................................15

    **Billing records reflect pre-service monitoring and coordination with judicial administration** ......................................................................................16

    **Extraordinary Circumstances: Limited Public Corroboration** .........................17

    **Rule 5.1: Constitutional Challenge Based on Newly Discovered Evidence** .............17

**CONCLUSION** ....................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Brown v. Matauszak*, 415 F. App; x 608 (6th Cir. 2011) ................................................... 11

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) ................................. 2, 12, 13, 15

*GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804 (6th Cir. 1999) ............................... 3

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ........................................................................ 3

*Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367 (6th Cir. 1998) .............. 3

*Tumey v. Ohio*, 273 U.S. 510 (1927) ................................................... 2, 12, 13, 15

*Wade v. Knoxville Utilities Board*, 259 F.3d 452 (6th Cir. 2001) ...................................... 12

*Ward v. Village of Monroeville*, 409 U.S. 57 (1972) ........................................ 1, 12, 13, 15

## STATUTES

28 U.S.C. § 1915(e)(2) ................................................................................... 19

28 U.S.C. § 2403................................................................................................... 17

42 U.S.C. § 1983................................................................................................... 4

## RULES

Fed. R. Civ. P. 5.1 ................................................................................... 17, 19

Fed. R. Civ. P. 8 ................................................................................................... 19

Fed. R. Civ. P. 12(f)................................................................................... 7, 10, 11

Fed. R. Civ. P. 15................................................................................................... 11

Fed. R. Civ. P. 15(a)(2) ................................................................................... 9

Fed. R. Civ. P. 59(e) ................................................................... 1, 3, 8, 9, 10, 11, 12

Fed. R. Civ. P. 60(b)................................................................................................... 3

Fed. R. Civ. P. 60(b)(1)-(6) ................................................................................... 1, 3

Fed. R. Civ. P. 60(b)(2) ................................................................................... 1, 3, 12

Fed. R. Civ. P. 60(b)(6) ................................................................................... 3, 17

## INTRODUCTION AND RELIEF REQUESTED

1. Now Comes Plaintiff, Ronald Warren Saunders III, (sole legal and physical custodian of his disabled minor child C.J.W.) proceeding Pro Se, and respectfully moving under Federal Rules of Civil Procedure 59(e) and Fed. R. Civ. P. 60(b)(1)-(6) to vacate the Judgment entered November 19, 2025 ECF Nos. 66, 67 (PageID.1935-1938), reopen this action, and permit Plaintiff to file a corrected Verified Third Amended Complaint for screening as the operative pleading. This motion presents two independent grounds for relief, each sufficient standing alone:

2. First, under Rule 59(e), the Court dismissed this action based on a preliminary draft ECF No. 25-2, which created ECF No. 53 (PageID.793-816). Plaintiff would not submit a draft as a final complaint. It was submitted as an attachment to a motion for leave to amend, not as an operative complaint, and Plaintiff expressly conditioned on future authorization and refinement. After granting leave, the Court converted that conditional draft into the operative pleading without affording Plaintiff the opportunity to file the verified complaint that Rule 15 leave to amend was intended to permit. Additionally, the Court entered judgment before adjudicating Plaintiff's pending constitutional challenge. These circumstances constitute clear procedural error and manifest injustice warranting relief under Rule 59(e).

3. Second, under Fed. R. Civ. P. 60(b)(2) and (6), Plaintiff has obtained documentary evidence, discovered after judgment, establishing objective circumstances bearing on structural due process. Measure against the due process standards articulated in *Tumey v. Ohio*[1], *Ward v.*

---

[1] *Tumey v. Ohio*, 273 U.S. 510 (1927). Tumey holds that due process is violated when the adjudicatory structure gives the decisionmaker a direct or institutional financial interest in the outcome, because such a system creates an unconstitutional temptation to favor one side regardless of actual bias.

*Village of Monroeville*[2], and *Caperton v. A.T. Massey Coal Co*[3], the record here reflects objective financial and administrative funding relationships that warrant careful constitutional scrutiny.

4. These relationships between the defense enterprise, and the judicial employer, are reflected in billing records showing pre-litigation coordination, and monitoring; interlocal financial ties between the defendant county and the county employing the presiding judge; and a unified public entity risk pool under Michigan Municipal Risk Management Authority (MMRMA) sharing civil rights liability exposure across member counties.

5. The procedural errors identified in this motion continue to cause ongoing, concrete harm. Because this action was dismissed at screening before Plaintiff was permitted to file a corrected operative complaint, the federal challenges to jurisdictional misclassification remain unresolved. As a result, Plaintiff's disabled minor child continues to be denied Medicaid coverage and related services tied to those classifications. This harm is ongoing, not speculative, and cannot be remedied after the fact. Each day the judgment remains in place forecloses federal review of claims that were never properly pled or screened, compounding irreparable injury to a vulnerable child and undermining confidence in the integrity of the proceedings.

---

[2] *Ward v. Village of Monroeville*, 409 U.S. 57 (1972). Ward clarifies that even indirect or institutional financial incentives-such as revenue interests tied to adjudication-violate due process where they create a temptation for bias, even if the adjudicator does not personally benefit.

[3] *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009). Caperton holds that due process requires recusal where objective circumstances create *a serious risk of actual bias, because structural conditions alone can render adjudication constitutionally intolerable without any showing of actual misconduct.*

## GOVERNING STANDARDS

### Rule 59(e) and Fed. R. Civ. P. 60(b)(1)-(6)

6. Plaintiff moves under Federal Rule of Civil Procedure 59(e), and in the alternative under Rule 60(b). Rule 59(e) permits a court to alter or amend a judgment to correct a clear error of law or fact, or to prevent manifest injustice.

    a. The Sixth Circuit recognizes four grounds for relief under Rule 59(e):

    b. a. a clear error of law;

    c. b. newly discovered evidence;

    d. c. an intervening change in controlling law; or

    e. d. the need to prevent manifest injustice[4].

7. "Manifest injustice" exists where a judgment rests on a misapprehension of the law or material facts, or where the result is plainly unjust in light of the record before the court[5].

8. Fed. R. Civ. P. 60(b)(2) authorizes relief from a final judgment based on newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for relief under Rule 59(e).

9. Fed. R. Civ. P. 60(b)(6) permits relief for "any other reason that justifies relief" but applies only in extraordinary circumstances and only where the asserted grounds are not encompassed by Rule 60(b)(1)-(5). Rule 60(b)(6) may be used to remedy defects in the integrity of the federal proceedings rather than to relitigate the merits[6].

---

[4] *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804 (6th Cir. 1999). GenCorp holds that Rule 59(e) permits a court to alter or amend a judgment to correct a clear error of law or prevent manifest injustice where the court's decision rests on an erroneous legal or procedural premise.
[5] *Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367 (6th Cir. 1998). Sault Ste. Marie holds that federal courts must resolve threshold jurisdictional and constitutional defects before allowing a judgment to stand, because actions taken without lawful authority are void and cannot be cured by procedural finality.
[6] *Gonzalez v. Crosby,* 545 U.S. 524 (2005). Gonzalez holds that Rule 60(b) may be used to obtain relief from a judgment based on a defect in the integrity of the federal proceedings-such as a procedural error or mistaken application of law-rather than to relitigate the merits.

# PROCEDURAL BACKGROUND

**Escalating Violations, Leave-to-Amend History, and Resulting Procedural Error**

10. At the time judgement was entered the Court's analysis proceeded without the benefit of an authorized, operative pleading reflecting the full and current record. As this federal action progressed, Defendants allegedly engaged in continued and increasingly aggressive conduct in related state court proceedings, requiring additional documentation and expansion of the proposed federal pleading. Plaintiff was simultaneously defending ongoing state proceedings while attempting to present federal claims. New alleged retaliatory acts, procedural violations, and constitutional deprivations occurred throughout the pendency of this action, necessitating ongoing revision of the proposed complaint to reflect an expanding and continuing pattern. Although substantial in scope, the proposed pleadings were intentionally structured so that the Court and all parties could identify the alleged events, defendants, claims, and supporting exhibits without guesswork.

11. At all relevant times, Plaintiff expressly identified his submissions as drafts in the drafting stage. Plaintiff consistently communicated that proposed complaints were preliminary, expressly conditional on leave of court, and subject to finalization after authorization. Plaintiff did not represent any draft as a finalized operative pleading absent leave and an opportunity to verify, organize, and complete the pleading contemplated by such leave.

**Procedural History Through July 10, 2025**

12. On May 9, 2025, Plaintiff commenced this civil rights action under 42 U.S.C. § 1983, alleging systemic violations of constitutional and statutory rights arising from child welfare proceedings affecting his daughter, C.J.W., for whom Plaintiff maintains sole legal custody.

13. The Court directed Plaintiff to file any motion requesting leave to amend by July 10, 2025. (ECF No. 24, (PageID.174)).

14. On July 10, 2025, Plaintiff filed an Emergency Motion for Leave to File Third Amended Complaint (ECF No. 25, (PageID.175-179)), attaching a preliminary 25-page draft complaint as ECF No. 25-2 (PageID.182-205). The motion expressly requested leave to amend and further sought thirty days to submit a supplemental statement of facts correlating more than three hundred exhibits to the allegations. (ECF No. 25 (PageID.177)).

15. The final page of the attached draft contained Plaintiff's handwritten notation: "Due to Computer capacity limits this can be Evolved on a pinpointed, if the 30-Day Motion For LEAVE IS GRANTED". (ECF No. 53 (PageID.816)). This notation expressly conditioned finalization of the draft on the grant of leave and confirmed that the attachment was preliminary and subject to further refinement.

**October 2025 Leave-To-Amend Sequence**

16. On October 17-18, 2025, Plaintiff filed motions seeking leave to file a verified Third Amended Complaint and requesting in camera review and redaction. (ECF No. 51 (PageID.742-765)); (ECF 52 (PageID.766-792)). Each filing expressly stated that the attached complaints were drafts in the drafting stage and requested time after the grant of leave to submit a finalized, verified pleading. These motions were necessitated by continued alleged violations occurring in the related state proceedings.

17. On October 20, 2025, the Magistrate Judge issued an Order granting Plaintiff's July 10, 2025, motion for leave to amend. (ECF No. 46 (PageID.470-471)). The Order accepted only the attachment to ECF No. 25-2 (PageID.182-205) as the operative complaint. The Order did not adjudicate Plaintiff's then pending motions at ECF No. 51(PageID.742-765) or 52

(PageID.742-792), which remained pending and were expressly identified as draft pleadings in the drafting stage.

18. On October 21, 2025, without adjudicating ECF No. 51 (PageID.742-765) or ECF 52 (PageID.742-792) and without notice to Plaintiff, the Clerk docketed ECF No. 53 (PageID.793-816) and stated filed by Plaintiff as an "Amended Complaint (filed per Order 46)". Plaintiff did not file ECF No. 53 (PageID.793-816) as a finalized pleading, did not consent to its designation as operative, and had expressly conditioned that draft on future leave and finalization. It did not reflect the legally operative theories or action structure, and it lacked multiple major sections required of an operative pleading.

19. That same day, the Magistrate Judge issued a Report and Recommendation ECF No. 54, (PageID.817-829) screening ECF No. 53 as the operative complaint and recommending dismissal. The Report does not acknowledge that Plaintiff's motions at ECF No. 51 (PageID.742-765) and 52 (PageID.742-792) remained pending, nor that the screened pleading had been expressly identified by Plaintiff as a preliminary draft in the drafting stage.

**Plaintiff's Ongoing Efforts to Cure Deficiencies**

20. Before issuing the Report and Recommendation, Plaintiff filed motions indicating his intent to streamline the complaint to seven counts, to verify the pleading, and to organize the allegations in conformity with federal pleading standards. This was Plaintiff's first Report and Recommendation in federal court. Proceeding pro se, Plaintiff was actively attempting to comply with the Court's guidance while navigating federal screening procedures.

21. Plaintiff was not afforded a meaningful opportunity to file the corrected, verified complaint contemplated by the grant of leave, nor was Plaintiff provided notice that a preliminary draft would be treated as the operative pleading and subjected to immediate screening.

22. On November 10, 2025, Plaintiff filed a Constitutional Challenge to Judicial Immunity as Applied in the Absence of Jurisdiction. ECF No. 60, (PageID.1231-1249). On November 19, 2025, the Court adopted the Report and Recommendation and entered judgment dismissing the action. ECF No. 66, 67, (PageID.1935-1938).

23. In doing so, the Court characterized Plaintiff's draft pleading as a "placeholder" and attributed the procedural posture to Plaintiff's filings, citing the volume of submissions. (ECF No. 66, (PageID.1936)). The Court further noted that a later proposed amended complaint exceeded 180 pages and stated it would have been stricken under Fed. R. Civ. P. 12(f) had it become operative. (ECF No. 66, (PageID.1937)). The Court did not address the constitutional challenge raised in ECF No. 60 before entering judgment.

**Procedural Impossibility and Manifest Injustice**

24. This sequence created a procedural impossibility. Plaintiff was granted leave to amend yet simultaneously deprived of any opportunity to comply with that grant by finalizing and filing the verified complaint contemplated by the leave order. Plaintiff never had an accurate operative pleading on the record because:

    a. each proposed pleading was expressly identified as conditional and in the drafting stage;

    b. ongoing alleged state court violations required continuous factual updates;

    c. Plaintiff was never afforded an opportunity to file the authorized finalized verified complaint after leave was granted; and

    d. the Court screened and dismissed the action based on a preliminary draft before Plaintiff could comply with the leave order.

25. Screening and dismissing an action based on draft pleadings that Plaintiff expressly identified as preliminary, while no finalized operative complaint was ever permitted to be filed constitutes clear procedural error and manifest injustice warranting relief under Federal Rule of Civil Procedure 59(e).

## ARGUMENT

**Rule 59(e): Clear Procedural Error and Manifest Injustice**

26. The Court's Own Orders Establish That ECF No. 25 Was a Motion for Leave, Not the Filing of an Operative Complaint

27. The Court's July 7, 2025, Order directed Plaintiff to file "any motion requesting leave to file an amended complaint and the proposed amended complaint" by July 10, 2025. ECF No. 24, (PageID.174). This language expressly distinguishes between:

    a. a motion requesting leave (the procedural request for permission); and

    b. the proposed amended complaint (a draft showing what Plaintiff sought to file if permission were granted).

28. Plaintiff complied precisely with that directive by filing ECF No. 25, titled "Emergency Motion for Leave to File Third Amended Complaint". The Court's October 20, 2025, Order confirms this procedural posture, stating: "This matter is before the Court on Plaintiff's Motion to Amend Complaint. ECF No. 25". (ECF No. 46, (PageID.470)). The Court thus correctly identified ECF No. 25 as a motion, not as the filing of an operative complaint.

**After Granting Leave, the Court Converted a Motion Attachment Into the Operative Pleading Without Permitting Plaintiff to File**

29. Standard practice under Fed. R. Civ. P. 15(a)(2) is straightforward:

   a. the plaintiff files a motion for leave to amend, often attaching a proposed draft;

   b. the court grants or denies leave;

   c. if leave is granted, the plaintiff files the amended complaint as a separate docket entry; and

   d. the court then screens or otherwise addresses the filed complaint.

30. Here, after correctly granting Plaintiff's motion for leave, the October 20 Order stated that Plaintiff's "amended complaint, ECF No. 25-2, (PageID.182-205), accepted for filing and constitutes the operative complaint moving forward". (ECF No. 46, (PageID.471)). That language reflects a judicial conversion of a motion attachment into an operative pleading, rather than an affirmative filing by Plaintiff.

31. Rule 15 authorizes courts to grant leave to file; it does not authorize courts to deem a motion attachment operative in lieu of the plaintiff's filing. After leave was granted, Plaintiff attempted to file corrected and verified versions of the complaint ECF Nos. 48, 51, 52. Those attempts were denied or rendered moot because the preliminary draft had already been designated as operative. Plaintiff was thus granted leave but never permitted that leave.

**The November 19, 2025, Order Misapprehends the Procedural Record**

32. The November 19, 2025, Order states that Plaintiff "asked to submit an amended complaint by July 10" and that "it was not error for the magistrate judge to hold Saunders to his word". (ECF No. 66, (PageID.1936)). Respectfully, the Court's own orders reflect that Plaintiff requested, and was granted, permission to file an amended complaint by July 10, 2025; they

do not reflect that Plaintiff represented an amended complaint would be filed or designated as operative by that date. The judgment therefore rests on a misapprehension of the procedural record.

33. Plaintiff's "word" was a procedural request embodied in a motion for leave. Conflating that request with the substantive act of filing, the complaint after leave was granted reflects a misapprehension of the procedural posture. Under Sixth Circuit precedent, a judgment based on such a misapprehension constitutes clear error of law warranting relief under Rule 59(e).

**The "Volume of Motions" Resulted from Plaintiff's Attempts to Comply With the Leave Order**

34. The Court observed that the "sheer volume of motions" made it difficult to identify the "true" amended complaint. (ECF No. 66, (PageID.1936)). The record shows that this volume resulted from Plaintiff's repeated efforts, after leave was granted, to file the authorized, verified complaint. Plaintiff filed ECF Nos. 48, 51, and 52 precisely. Each attempt was rejected or deemed moot because the preliminary draft had already been converted into the operative complaint.

35. The procedural confusion did not arise from missed deadlines or disregard of court orders, but from the Court's acceptance of a draft attachment as operative before Plaintiff could file the complaint authorized by the grant of leave.

36. The Court stated it "would have stricken the complaint under Rule Fed. R. Civ. P. 12(f) had it become the operative pleading". (ECF No. 66, (PageID.1937)). Rule Fed. R. Civ. P. 12(f) addresses redundant or immaterial matter, defects that are inherently curable through amendment. The Sixth Circuit has held that dismissal is improper where deficiencies are

curable and the plaintiff has not been afforded an opportunity to amend. *Brown v. Matauszak*[7].

37. Here, the Court:

    a. granted leave to amend;

    b. accepted a preliminary draft as operative;

    c. screened and dismissed that draft; and

    d. indicated corrected versions would be stricken for Fed. R. Civ. P. 12(f), which is curable.

38. This sequence created a procedural bind: the draft was deemed insufficient, yet corrected versions were foreclosed. For a pro se litigant in an unserved case, dismissal without a meaningful opportunity to cure form defects constitutes manifest injustice.

**Judgment Was Entered Without Adjudicating the Pending Constitutional Challenge**

39. Nine days before judgment, Plaintiff filed a constitutional challenge to judicial immunity as applied in the absence of jurisdiction. (ECF No. 60 (PageID.1231-1249)). The Court entered judgment on November 19, 2025, without addressing, denying, or certifying that challenge. Entering final judgment while a substantial constitutional question remains pending further contributes to the manifest injustice warranting relief under Rule 59(e).

40. "Having previously filed an amended complaint, Plaintiff must obtain leave to amend, which shall be freely given when justice so requires. See Fed. R. Civ. P. 15. The factors relevant when considering whether to grant leave to amend include: (1) undue delay in filing, (2) lack of notice to the opposing party, (3) bad faith by the moving party, (4) repeated failure to cure deficiencies by previous amendments, (5) undue prejudice to the opposing party, and

---

[7] *Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011)

(6) futility of amendment. See *Wade v. Knoxville Utilities Board*, 259 F.3d 452, 458 (6th Cir. 2001)". – Green (2025)

41. This was Plaintiff's first Report and Recommendation in federal court. Plaintiff, proceeding pro se, was learning federal screening procedures in real time and had expressly indicated, prior to issuance of the Report and Recommendation, his intent to reduce the complaint from eighteen counts to seven, and to reorganize and verify the pleading in accordance with federal standards. Plaintiff attempted to comply with procedural requirements, not evade them.

42. The Court granted Plaintiff leave to amend but then accepted a preliminary draft attachment as operative, rather than permitting Plaintiff to file the complaint after leave was granted. Plaintiff attempted to file corrected versions, all of which were rejected. The case was dismissed based on a draft Plaintiff expressly conditioned on future leave and refinement, while Plaintiff was actively working to cure deficiencies and while a constitutional challenge remained unadjudicated. Taken together, these circumstances constitute clear procedural error and manifest injustice warranting relief under Rule 59(e).

## Fed. R. Civ. P. 60(b)(2) AND (6): NEWLY DISCOVERED EVIDENCE AND EXTRAORDINARY CIRCUMSTANCES

### Constitutional Standard: Structural Due Process

43. The Due Process Clause forbids adjudication under circumstances that create an objective, constitutionally intolerable risk of bias, even absent proof of actual prejudice. *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); *Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009).

44. In Tumey, the Supreme Court held that due process is violated when a judge has a "direct, personal, substantial, pecuniary interest" in the outcome. (273 U.S. at 523)

45. In Ward, the Court extended Tumey to situations where the judge's employer, rather than the judge personally, has a financial stake in the outcome. (409 U.S. at 60)

46. In Caperton, the Court held that due process requires recusal when objective circumstances create a "probability of bias" so extreme that it "rises to a constitutional level." (556 U.S. at 877, 884)

47. Plaintiff respectfully submits that the evidence obtained after judgment raises fundamental questions under these precedents. Evidence obtained after Judgment includes Defense Counsel's Sworn Statement Regarding Representation and Funding. [Exhibit AO999]

48. On November 13, 2025, defense counsel Rosati, Schultz, Joppich & Amtsbuechler P.C. ("RSJA") filed an affidavit in related state court proceedings.

49. In that affidavit, Alexandra Page stated, "Has had a professional relationship with Allegan County Defendants for at least 5 years. Undersigned counsel's firm has also maintained a professional relationship with Allegan County's underlying funding unit for more than a decade. For the sixth factor, undersigned counsel has dedicated a significant portion of her practice to Allegan County, and the defense of its officials, officers, and employees, including but not limited to certain State Officials such as the elected and appointed Judicial Officers of Allegan County".

50. Plaintiff obtained a copy of this affidavit after judgment. This statement, Plaintiff respectfully submits, identifies an institutional overlap between the defense enterprise (counsel representing the defendant county and associated entities) and the judicial employer (the entity that employs the state court judges presiding over the underlying proceedings).

**Billing Records Reflecting Pre-Litigation Monitoring and Coordination**

51. After judgment, Plaintiff obtained billing records from Rosati, Schultz, Joppich &
    Amtsbuechler P.C. Slip Listing reflecting:

    a. Charges totaling $9,229.70. Including $5,743.50 billed for monitoring Plaintiff's federal
    case "prior to our representation" and "prior to being properly served" (Page, 2025, p. 7,
    Rosati, Schultz, Joppich & Amtsbuechler P.C. Slip Listing).

    b. An entry dated May 27, 2025: "Correspondence to MMRMA Claims regarding federal
    lawsuit" (Page, 2025, p. 5, Rosati, Schultz, Joppich & Amtsbuechler P.C. Slip Listing);
    and

    c. an entry dated June 9, 2025: "Correspondence to and from court regarding status of
    Orders of Disqualification (Page, 2025, p. 2, Rosati, Schultz, Joppich & Amtsbuechler
    P.C. Slip Listing)."

52. The state court docket reflects that a judicial transfer occurred on June 10, 2025, one day
    after the billing entry regarding "Orders of Disqualification."

53. These records, Plaintiff submits, reflect coordination between defense counsel and judicial
    administration outside formal docketed procedures and before Plaintiff's federal case was
    served.

54. Interlocal Financial Arrangements. Plaintiff obtained Interlocal Agreement [Exhibit AO047]
    between Ottawa County (which employs certain state court judges involved in the
    underlying proceedings) and Allegan County (both of which are defendants in this federal
    action).

55. The agreement provides for $15,000 annual payments from Allegan County to Ottawa
    County, tied in part to maintaining Ottawa County's "strong financial position" and related to
    prosecutorial services. Plaintiff respectfully submits that this agreement creates a direct,

recurring fiscal relationship between the defendant county and the county that employs the presiding judge.

56. Premium Judicial Compensation: Public salary records obtained after judgment reflect that certain judges involved in the underlying "alleged retaliatory proceedings" receive compensation above median rates for comparable positions, over 250% above the median.

57. Plaintiff submits that such compensation, when combined with the institutional financial arrangements described above, may create a quantifiable dependency on the county employment system that shares pooled civil rights liability exposure. Michigan Municipal

**Risk Management Authority (MMRMA) Risk Pooling**

58. After judgment, Plaintiff obtained information indicating that Allegan County, Ottawa County, and Kalamazoo County (where related proceedings have occurred) participate in the Michigan Municipal Risk Management Authority ("MMRMA"), a statutory public-entity risk pool.

59. Under MMRMA's structure, civil rights claims are paid from shared reserves, and the system is designed to maintain "predictable member contributions." Plaintiff respectfully submits that this pooled-liability arrangement creates an institutional financial interest-shared across member counties-in limiting or dismissing civil rights claims.

60. Objective Circumstances and Constitutional Concern, Plaintiff does not allege-and need not prove-actual bias or improper motive on the part of any individual judge or attorney.

61. Rather, Plaintiff submits that the objective circumstances documented above create an institutional alignment of monetary interests that, under Tumey, Ward, and Caperton, raise serious due process concern:

62. Defense counsel admits to representing "the court's underlying funding unit which employs the Judges".

**Billing records reflect pre-service monitoring and coordination with judicial administration**

63. Interlocal agreements create direct, recurring payments from the defendant county to the judicial employer; Premium judicial compensation creates quantifiable dependency on the county employment system; and MMRMA pooling means that dismissal or limitation of liability benefits all participating counties, including the judicial employer, through preserved reserves.

64. These are not speculative connections. They are documented, objective features of the governmental structure within which adjudication occurred. Plaintiff respectfully submits that such circumstances-where the judge's employer and the defense enterprise share pooled financial exposure to civil rights liability, and where dismissal benefits the judicial employer through preserved reserves-raise questions of constitutional magnitude under the Due Process Clause.

65. This structural defect is not curable through individual recusal, because every state court judge in the relevant jurisdiction is employed by a county participating in the same or an equivalent risk pool. Reassignment from Allegan County to Ottawa County (a co-member receiving interlocal payments from Allegan) did not cure the concern; it preserved it.

66. Where the system's design forecloses structural neutrality, Plaintiff respectfully submits that federal review is constitutionally necessary.

**Extraordinary Circumstances: Limited Public Corroboration**

67. Plaintiff does not offer media reports as proof of his claims, but notes solely for context under Fed. R. Civ. P. 60(b)(6) that Allegan County child welfare and court operations have recently been the subject of public attention:

    a. The Director of the Michigan Department of Health and Human Services Elizabeth Hertel publicly visited the Allegan County MDHHS office to observe a "first-of-its-kind" CSA teaming model; and

    b. Local reporting has referenced concerns by a long-serving Allegan County judge regarding systemic issues bearing rule-of-law principles.

68. Plaintiff offers these public events not as evidence, but as corroborating context consistent with his allegations of systemic structural concerns.

**Rule 5.1: Constitutional Challenge Based on Newly Discovered Evidence**

69. Fed. R. Civ. P. 5.1 and 28 U.S.C. § 2403 require notice to the Attorney General when the constitutionality of a statute, ordinance, or governmental structure is drawn into question.

70. Plaintiff's newly discovered evidence supports a constitutional challenge to the structure under which state court adjudication occurred specifically:

71. Whether the Due Process Clause is violated when adjudication occurs within a governmental structure in which:

72. Defense counsel admits to representing "the court's underlying funding unit which employs the Judges".

73. The judicial employer and the defendant county participate in a unified public-entity risk pool (MMRMA) that pools civil rights liability exposure.

74. Dismissal or limitation of civil rights liability benefits the judicial employer through preserved pooled reserves.

75. Plaintiff raises a constitutional challenge to the application of judicial immunity and adjudicative neutrality where the adjudicating judges are financially and structurally dependent on a defendant county through interlocal agreements and shared risk-pool arrangements.

76. As alleged, defendant counties make recurring annual payments under interlocal agreements that fund the judicial employment system, and judges receive compensation through that system at rates exceeding market comparators, creating a quantifiable and ongoing financial dependency on county participation.

77. Because every state court judge within the relevant jurisdiction is employed by a county participating in the same or equivalent risk-pool and interlocal structure, meaningful structural recusal is unavailable, and the alleged financial alignment is not limited to an individual judge but is systemic.

78. Plaintiff contends that adjudication of claims against a county under these conditions, where the adjudicator is financially dependent on the defendant's funding structure, violates the Due Process Clause of the Fourteenth Amendment as applied.

79. Once leave is approved, Pursuant to Federal Rule of Civil Procedure 5.1, Plaintiff will serve notice of this constitutional challenge on the Michigan Attorney General and the United States Attorney General.

80. Plaintiff respectfully requests that the Court address this constitutional challenge or certify the question in the manner required by law.

## CONCLUSION

81. For the foregoing reasons, Plaintiff respectfully requests that this Court:

    a. VACATE November 19, 2025, Judgment (ECF Nos. 66, 67).

    b. REOPENING with this action;

    c. RECOGNIZE that ECF No. 25 was a motion for leave to amend, and that the Court's "acceptance for filing" of the motion attachment, without permitting Plaintiff to file the complaint after leave was granted, constitutes procedural error under Rule 15.

    d. PERMIT Plaintiff to file a corrected verified Third Amended Complaint, streamlined to seven counts, organized by claim, and compliant with Fed. R. Civ. P. 8.

    e. SCREEN that complaint under 28 U.S.C. § 1915(e)(2).

    f. ADDRESS or CERTIFY the constitutional challenges raised in ECF No. 60 and supplemented herein, including the structural due process question set forth above, in accordance with Fed. R. Civ. P. 5.1 and applicable law;

    g. GRANT Plaintiff fourteen (14) days after reopening to supplement this motion with properly formatted exhibits and affidavits as required by Local Rule; and

    h. GRANT such other relief as justice requires.

Respectfully submitted,

/s/ Ronald Warren Saunders III

Plaintiff, pro se

10442 Tomkinson Drive

Scotts, MI 49088

(269) 394-0951

RonSaundersIII@gmail.com

Dated: December 17, 2025

## CERTIFICATE OF SERVICE

I certify that on December 17, 2025, I served this Motion to Alter or Amend Judgment and for Relief from Judgment, along with all supporting affidavits and exhibits, by delivering one copy to the Clerk of Court for filing.

**No defendants have been served in this action.** Service on defendants is not required at this time as the case was dismissed at screening before service was affected. This motion seeks to vacate that dismissal and reopen the action. If the motion is granted, proper service on defendants will be effectuated in accordance with Federal Rules of Civil Procedure after the corrected verified Third Amended Complaint is filed and screened.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Respectfully submitted,

/s/ Ronald Warren Saunders III

Plaintiff, pro se

10442 Tomkinson Drive

Scotts, MI 49088

(269) 394-0951

RonSaundersIII@gmail.com

Dated: December 17, 2025

## PUBLIC CORROBORATION OF SYSTEMIC CONCERNS
### (CONTEXTUAL SUPPORT)

### MDHHS Director Elizabeth Hertel's Visit to Allegan County [Exhibit AO096]

1. After judgment, I became aware through public reporting and official documentation that the Director of the Michigan Department of Health and Human Services, Elizabeth Hertel, publicly visited the Allegan County MDHHS office.

2. This visit involved Director Hertel observing and promoting what was officially described as a "first-of-its-kind" Children's Services Agency (CSA) teaming model" specifically implemented in Allegan County to address and improve child welfare outcomes and employee experience.

3. This public acknowledgment by Michigan's highest child welfare official that Allegan County required implementation of a special, unprecedented reform model is consistent with my allegations that Allegan County child welfare administration and court operations have been subject to systemic concerns requiring state-level intervention.

4. I do not offer this as proof of my specific factual allegations. Rather, I present it as corroborating context under Rule 60(b)(6) showing that the very institutions whose conduct I challenge have drawn official state attention and intervention for systemic operational concerns.

5. True and correct copies of publicly available reporting or official documentation regarding Director Hertel's "first-of-its-kind" Allegan County visit are attached hereto as [Exhibit AO096].

**Allegan County Judicial Resignation with Rule-of-Law Concerns [Exhibit AO097]**

6. After judgment, I obtained a transcript or public reporting reflecting that a long serving Allegan County judge (more specifically the Allegan County 57th Circuit Court's Chief Judge William Baillargeon) publicly discussed resignation, with stated concerns regarding rule of law issues and systemic problems within the Allegan County court system, among others.

7. A judicial officer's public expression of rule of law and systemic concerns regarding the court system in which that officer serves carries significant weight as contextual corroboration of institutional dysfunction.

8. This public acknowledgment by a member of the judiciary itself is consistent with my allegations of systemic procedural violations, jurisdictional defects, and institutional conflicts within Allegan County courts.

9. I do not offer this as proof of my specific factual allegations. Rather, I present it as corroborating context under Rule 60(b)(6) showing that concerns about systemic rule-of-law issues in Allegan County courts have been publicly acknowledged even from within the judiciary.

10. True and correct copies of the transcript or public reporting regarding the Allegan County judicial resignation/retirement with rule-of-law concerns are attached hereto as Exhibit AO097.

**Rosati, Schultz, Joppich & Amtsbuechler P.C. Billing Records: Pre-Service Monitoring and Coordination [Exhibit AO098]**

11. After judgment, I obtained billing records from defense counsel Rosati, Schultz, Joppich & Amtsbuechler P.C. ("RSJA") through discovery in related state proceedings.

12. These billing records show charges totaling over $9,000, including:

   a. $5,743.50 for monitoring my federal case "prior to our representation" (Page, 2025, p.7)
      and "prior to being properly served" (Page, 2025, p. 7) - documenting surveillance of my
      federal civil rights case before defendants were even served;

   b. An entry dated May 27, 2025: "Correspondence to MMRMA Claims regarding federal
      lawsuit" (Page, 2025, p. 5) - documenting coordination with the Michigan Municipal
      Risk Management Authority insurance pool regarding my federal case;

   c. An entry dated June 9, 2025: "Correspondence to and from court regarding status of
      Orders of Disqualification" (Page, 2025, p.2) - documenting ex parte coordination with
      judicial administration regarding disqualification.

13. The state court docket reflects that a judicial transfer occurred on June 10, 2025, one day
    after the June 9, 2025, billing entry documenting coordination with the court about
    disqualification orders.

14. These records document: Pre-service surveillance of my federal civil rights case by defense
    counsel, Coordination with the insurance pool (MMRMA) that shares liability exposure
    across member counties, and Ex parte coordination with judicial administration regarding
    judge assignments.

15. I could not have obtained these documents prior to judgment because they were not produced
    until November 2025, when Alexandra Page of Rosati, Schultz, Joppich & Amtsbuechler P.C.
    mailed them to me.

16. True and correct copies of the Rosati, Schultz, Joppich & Amtsbuechler P.C. billing records
    are attached here as Exhibit AO098.

**New Constitutional Challenge Based on Newly Discovered Evidence [Exhibit AO099]**

17. Based on the evidence obtained after judgment, particularly the RSJA billing records documenting the institutional relationships and coordination described above, I now present a distinct constitutional challenge that was not ripe or provable before dismissal.

18. This constitutional challenge asks: Whether the Due Process Clause is violated when adjudication occurs within a governmental structure in which:

    a. Defense counsel monitors a plaintiff's federal civil rights case before service and coordinates with the insurance pool (MMRMA) that shares liability exposure;

    b. Defense counsel coordinates ex parte with judicial administration regarding judge assignments and disqualification;

    c. The judicial employer and defendant county participate in a unified public-entity risk pool (MMRMA) that pools civil rights liability exposure across member counties;

    d. Dismissal or limitation of civil rights liability benefits the judicial employer through preserved pooled reserves;

    e. The defendant county makes recurring annual payments to the county employing the presiding judges under interlocal agreements; and

    f. Structural recusal is impossible because every state court judge is employed by a county participating in the same or equivalent risk pool.

19. I do not request that the Court adjudicate this constitutional challenge at this stage. Rather, I submit that the existence of this newly discovered evidence and the serious constitutional question it raises independently supports reopening under Rule 60(b)(2) and (6).

20. Once the case is reopened and I am permitted to file my corrected verified Third Amended
    Complaint, this constitutional challenge can be properly briefed, noticed under Rule 5.1, and
    adjudicated in due course.

21. The constitutional magnitude of this newly discovered evidence, going directly to the
    structural neutrality of the adjudicative process itself, constitutes "extraordinary
    circumstances" warranting relief under Rule 60(b)(6).

22. A description of this constitutional challenge and the newly discovered evidence supporting
    it is attached hereto as Exhibit AO099.

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Plaintiff,

**Ronald Warren Saunders III,**

*on behalf of*

*C.J.W. (Saunders)*

represented by **Ronald Warren Saunders, III**

10442 Tomkinson Dr.

Scotts, MI 49088

PRO SE

*v.*

Civil Action No. 1:25-cv-00544-HYJ-PJG

Chief U.S. District Judge Honorable Hala Y. Jarbou

U.S. Magistrate Judge Hon. Phillip J. Green

COUNTY OF ALLEGAN, et al.,

Defendants.

**AFFIDAVIT OF PROCEDURAL PURPOSE AND EXHIBIT PRESERVATION**

I, Ronald Warren Saunders III, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Plaintiff in this action, proceeding pro se. I have personal knowledge of the facts stated herein.

2. This affidavit is submitted in support of Plaintiff's Motion to Alter or Amend Judgment and for Relief from Judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60(b).

3. The motion is grounded primarily in procedural error, including but not limited to the sequencing and execution of leave to amend under Fed. R. Civ. P. 15, and the entry of judgment before Plaintiff was permitted to file the authorized, verified operative pleading contemplated by the grant of leave.

4. The exhibits attached to the motion, including those addressing constitutional and structural issues, are submitted solely for purposes of preservation, completeness of the record, and to demonstrate matters that were procedurally foreclosed from lawful presentation prior to dismissal.

5. Plaintiff does not request that the Court adjudicate the constitutional or structural issues reflected in the attached exhibits at this stage.

6. Plaintiff submits those exhibits to prevent procedural extinguishment of issues that could not be lawfully presented or screened due to the procedural posture of the case at the time judgment was entered.

7. Plaintiff respectfully seeks relief under Rule 59(e) and Rule 60(b) only to correct the identified procedural defects, vacate the judgment, and permit Plaintiff to file a corrected, verified amended complaint in accordance with the Federal Rules of Civil Procedure.

8. Plaintiff affirms that, if relief is granted, he will comply fully with any limitations, sequencing, or directives imposed by the Court regarding the scope, form, and timing of further filings.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17 day of December, 2025, in Scotts, MI. 49088.


Respectfully submitted,

/s/ Ronald Warren Saunders III

Plaintiff, pro se

10442 Tomkinson Drive

Scotts, MI 49088

(269) 394-0951

RonSaundersIII@gmail.com